# IN THE COURT OF APPEALS OF IOWA

No. 20-0404
Filed April 29, 2020

**IN THE INTEREST OF M.B.,**
**Minor Child,**

**C.B., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.

        A mother appeals adjudicatory and dispositional orders involving her child.

**AFFIRMED IN PART AND REVERSED IN PART.**

        Katie Eastvold, North Liberty, for appellant mother.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

        Kristin L. Denniger, Cedar Rapids, attorney and guardian ad litem for minor child.

        Considered by Bower, C.J., and Vaitheswaran and Ahlers, JJ.

**VAITHESWARAN, Judge.**

A mother appeals adjudicatory and dispositional orders involving her child, born in 2010.  She contends the record lacks clear and convincing evidence to support the grounds for adjudication cited by the district court.  *See In re L.G.*, 532 N.W.2d 478, 481 (Iowa Ct. App. 1995).

"The underlying grounds of adjudication in child in need of assistance cases have important legal implications beyond the adjudication."  *Id.* at 480.  Those grounds "may affect the course of the dispositional phase of the case, and may even be the basis for a subsequent proceeding for termination of a parent-child relationship."  *Id.*; *accord In re J.S.*, 846 N.W.2d 36, 41 (Iowa 2014) (same).  Accordingly, we will address each of the four statutory grounds on which the district court relied.

Iowa Code section 232.2(6)(c)(2) (2019) defines a child in need of assistance as a child

> [w]ho has suffered or is imminently likely to suffer harmful effects as a result of any of the following:
> . . . .
>    (2) The failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child.

The child's mother and father divorced in 2015.[1]  After the divorce, the child lived with her mother.  The father exercised visitation three times.

The department of human services intervened after receiving a complaint that green mold was growing on the child's scalp, the mother's home lacked

---

[1] The trial transcript indicates the divorce was finalized in 2016, but the social history report documents the year as 2015.

running water, and the city was about to condemn the house. The department applied to have the child removed from the mother's custody. The district court granted the application, and the child was placed with her father.

The father testified that when the child was placed with him, she was "completely behind" on her immunizations, had not been to a dentist for "[t]hree years," had mold in her hair, and was wearing diapers. She was "extremely behind" in her education, with a "non-existent ability to write," had reading skills at the level of "a kindergartner," and had "non-existent" math skills. He stated she had no "learning disabilities to explain why she was behind." He confirmed the mother's house lacked running water, had "four to eight inches of sewage water just floating in the basement," was "overrun with clutter" including "boxes and books" on the child's bed, and had "rotting food on the tables and in the refrigerator."

The child was evaluated at a child protection center. Based on a review of her medical chart, the evaluator suspected that she experienced "[m]edical [c]hild [a]buse (Munchausen Syndrome by proxy)" at the hands of her mother.

A child protective worker employed by the department attended the evaluation and heard the child "talk about not having water to bathe or shower." She issued a "founded" child-abuse report based on the absence of running water; the "placarding" of the house, meaning "the city determined that it was not a livable location for anybody to continue to inhabit"; the mold in the child's hair; and the suspected medical child abuse.

The State established that the mother failed to exercise a reasonable degree of care in supervising the child as required by Iowa Code section 232.2(6)(c)(2).

Iowa Code section 232.2(6)(g) defines a child in need of assistance as a child "[w]hose parent, guardian, or custodian fails to exercise a minimal degree of care in supplying the child with adequate food, clothing, or shelter and refuses other means made available to provide such essentials." The department employee testified that the mother refused reunification services. Based on her non-cooperation and the condition of the home, we conclude this ground for adjudication was satisfied.

Iowa Code section 232.2(6)(n) defines a child in need of assistance as a child "[w]hose parent's or guardian's mental capacity or condition, imprisonment, or drug or alcohol abuse results in the child not receiving adequate care." Although the mother was jailed for a short period of time, she did not serve time in prison. That leaves the mother's "mental capacity or condition" and "drug or alcohol abuse" as the predicates for application of this provision.

Although the department child protective worker expressed concerns about the mother's mental health, she acknowledged the mother had not undergone a mental-health evaluation and she declined to characterize the medical child abuse finding as "a mental health diagnosis." We conclude the State failed to prove the mother's "mental capacity or condition" resulted in deprivation of care.

The evidence of drug or alcohol abuse was as follows. Shortly before the department intervened, the mother was charged with operating a motor vehicle while under the influence, first offense. The mother appeared to concede she pled

guilty to the charge. She also stated that, while she was jailed on the charge, her disabled adult son cared for the child. Based on this evidence, we conclude the State proved that the mother's substance abuse resulted in the child's receipt of inadequate care.

We are left with Iowa Code section 232.2(6)(b), which defines a child in need of assistance as a child "[w]hose parent, guardian, other custodian, or other member of the household in which the child resides has physically abused or neglected the child, or is imminently likely to abuse or neglect the child." "Within chapter 232, 'physical abuse or neglect' and 'abuse or neglect' mean 'any nonaccidental physical injury suffered by a child as the result of the acts or omissions of the child's parent, guardian, or custodian or other person legally responsible for the child.'" *J.S.*, 846 N.W.2d at41 (citing Iowa Code § 232.2(42)).

The child told the child protection team that the mother "spanked her sometimes but very, very rarely." She "denied ever getting bruises or injuries from something her mom did." Although the State cites the father's statement to the child protective worker that the mother "had a history of pulling [the child's] hair and dragging" her, the department did not issue a founded child-abuse report based on that assertion. We conclude the State failed to establish that the mother inflicted a non-accidental physical injury on the child. Accordingly, we reverse the adjudication of the child under this provision.

We affirm the adjudication of the child under Iowa Code sections 232.2(6)(c)(2), (g), and (n). We reverse the adjudication of the child under section 232.2(6)(b).

**AFFIRMED IN PART AND REVERSED IN PART.**